579 So.2d 215 (1991)
NEW HOLLAND, INC., Appellant/Cross-Appellee,
v.
James J. TRUNK, Etc., et al., Appellees/Cross-Appellants.
No. 90-501.
District Court of Appeal of Florida, Fifth District.
April 25, 1991.
Rehearing Denied May 30, 1991.
*216 Steven L. Brannock of Holland & Knight, Tampa, for appellant/cross-appellee.
William H. Lefkowitz of Sherr, Tiballi, Fayne, Schneider, Sheptow, Kopelman & Byrd, Ft. Lauderdale, for appellees/cross-appellants.
COWART, Judge.
In 1974, a manufacturer (Sperry-New Holland) began selling equipment on credit to a dealership (Trunkline Equipment Company) under a dealership agreement. In 1984, appellee Carol Trunk, as guarantor, executed a guaranty agreement guaranteeing and becoming surety for all sums of money owing to the creditor (Sperry-New Holland) by the debtor (Trunkline Equipment Company) from time to time. Following execution of this guaranty agreement, the creditor extended credit on a continuing basis to the debtor under a wholesale financing agreement providing for full payment within 12 months from the debtor's receipt of equipment from the creditor.
The dealership agreement and the financing agreement each provided for assignment by the manufacturer-creditor. On March 27, 1986, the manufacturer sold its business and assigned both agreements, and its accounts receivables and the guaranty agreement, to its successor in business, appellant New Holland, Inc. The assignee (New Holland, Inc.) continued to extend credit to the debtor while making an audit of the debtor's account. In late 1986, the assignee found the debtor in default in payment of its account, terminated the dealership agreement, repossessed and sold such equipment as it could, and brought this action against the guarantor for payment of the balance due for credit extended to the debtor.
The trial court entered judgment for the guarantor finding that the guaranty was a "special guaranty" and that the debtor was not in default on the guaranteed obligations prior to the assignment of the guaranty agreement to the assignee and held that the assignee of a special guaranty could not recover from the guarantor for debt owing but not due at the time of the assignment. The assignee appeals.
A guaranty is a promise to pay some debt (or to perform some obligation) *217 of another on the default of the person primarily liable for payment or performance. A "general" guaranty is one addressed to all persons generally and may generally be enforced by anyone to whom it is presented who acts upon it. A "special" guaranty is one addressed to a particular entity and under it ordinarily only the named or specifically described promisee acquires rights. Brunswick Corp. v. Creel, 471 So.2d 617 (Fla. 5th DCA 1985); Lee v. Rubin, 117 So.2d 230 (Fla. 3d DCA 1960). The trial court was correct in finding the guaranty in this case was a special guaranty being addressed solely to the original creditor (Sperry-New Holland).
Generally, contract rights can be assigned unless they involve obligations of a personal nature or there is some public policy against the assignment or such assignment is specifically prohibited by the contract. Brunswick, 471 So.2d at 618. In Brunswick, this court explained that special rules govern the assignability of guaranties and depend upon characterization of the guaranty as special or general. Id. Under the common law which Florida follows, a general guaranty is assignable while a special guaranty is generally not assignable because extending credit constitutes the exercise of discretion and a guaranty agreement naming a particular creditor as promisee implies special trust and confidence placed by the guarantor in the named creditor and the assignment of the guaranty to another prospective creditor materially alters the guarantor's undertaking. Id.; see generally, Annotation, Who May Enforce Guaranty, 41 A.L.R.2d 1213, 1244 (1955) (recognizing a split of opinion among jurisdictions concerning assignability of special guaranties).[1] An exception, however, has been recognized in Florida and other states, that a named creditor may, following breach of a special guaranty, assign his cause of action against the guarantor. Brunswick, 471 So.2d at 618, citing Tobin v. Iowa Home Mutual Casualty Co., 209 So.2d 485 (Fla. 3d DCA 1968) (upholding assignment made after breach giving rise to liability, after cause of action had accrued and legal action had been instituted); Burkhardt v. Bank of American National Trust & Savings Assoc., 127 Col. 251, 256 P.2d 234 (1953); In re Klink's Estate, 310 Ill. App. 609, 35 N.E.2d 684 (1941). As explained in Brunswick, this is because the policy behind non-assignability of a special guaranty is absent where credit has been extended by the named creditor and the guarantor has yet to pay the debt as it agreed to do. 471 So.2d at 618.[2]
In Brunswick, the guaranty was special in nature but the court held that the assignment was valid and that the assignee could enforce the guaranty. This court noted that the named creditor extended credit to the debtor and it was only after default that the named creditor made the assignment to Brunswick. Brunswick, as assignee, was not seeking to recover from the guarantor for any credit the assignee extended to the creditor. The court noted that the case involved assignment of a debt rather than assignment of a guaranty. Id. at 619. In Brunswick the court distinguished Lee v. Rubin, wherein the assignee suffered an adverse judgment, as involving credit to the named creditor by the assignee, i.e., the credit was extended after the assignment of the guaranty. See also, *218 FinanceAmerica Private Brands, Inc. v. Harvey E. Hall, Inc., 380 A.2d 1377 (Del. 1977) (debts sued on arose after the assignment). The Brunswick court held that under Florida law, an original named creditor, following breach of a special guaranty, may assign its cause of action against the guarantor.
In this case the guarantor argues that Brunswick holds that the assignee of a special guaranty may enforce the guaranty against the guarantor only when there has been a default giving rise to a cause of action for breach of the special guaranty prior to the assignment. The Brunswick court did note that the debtor had defaulted prior to the assignment, explaining that "a cause of action for breach of a guaranty agreement arises upon default and a subsequent refusal to pay by the guarantor." 471 So.2d at 619.
In the instant case, there was no default by the debtor (primary obligor) prior to the March 27, 1986, assignment. Therefore in this case, unlike in Brunswick and Tobin, no cause of action for breach in favor of the original creditor had matured or accrued at the time of the assignment of the guaranty. The assignee of the debt and of the guaranty in this case argues that the issue of the moment of default is immaterial and that it is an illogical and inequitable principle of law which extinguishes a guarantor's liability for debt incurred within the terms and contemplation of a guaranty agreement simply because such debt and guaranty are later assigned.
The assignee points out that Lee v. Rubin, denying enforcement of an assigned special guaranty, dealt with post assignment extensions of credit made by the assignee as creditor while Brunswick v. Creel and Tobin v. Iowa Home Mutual, permitting enforcement of an assigned special guaranty, dealt with pre-assignment extensions of credit made by the original creditor after a default. This case falls somewhere in between, with the assignment made after the extension of credit but before an actual default.
There is a principle of law that the assignment of a principal obligation also operates as an assignment of the guaranty of the obligation so that the guaranty is effective to collect the obligation which existed at the time of the assignment. See 38 Am.Jur.2d Guaranty § 36. This principle, recognized in Mechanic's American National Bank v. Rowell, 182 S.W. 989 (Mo. 1916) and in dicta in a number of cases,[3] seems eminently fair, permitting an assignee to enforce the guarantor's obligation as it exists at the time of the assignment but not subjecting the guarantor to liability for extensions of credit made by the assignee.[4]
The original rule that a special guaranty could not be assigned was created solely out of concern about the unfairness of expanding the guarantor's special undertaking by applying the guaranty to credit extended by an assignee of a special guaranty and therefore, in originally stating that assignments of special guaranties were invalid, stated the legal principle more broadly than the reason for the rule required. The later cases (Tobin and Brunswick) originating an "exception" to the original rule as to debt extended by the named creditor of a special guaranty incidentally involved debt that was past due, and those cases stated the exception too narrowly by incorporating that element into the statement of the exception. The reason for the original rule prohibiting the assignment of a special guaranty had nothing to do with whether the debt resulting from the credit extended by the named creditor was past due or not. There is no legal prohibition to the assignment of debt owing but undue and no reason to prohibit the enforcement of a guaranty as to such debt.
A good theoretical rule of law, or of a proper exception or limitation to the rule, *219 should be accurately formulated and stated to fit the reason for, or purpose to be served by, the rule or exception. Then the facts of a particular case can be examined with the rule (and its reason) in mind and a decision made in the particular case by finding that the given case is either within or without the rule or some exception. The correct statement of the full rule and its exceptions is not dicta and is superior to merely formulating or stating or reformulating or restating a general rule, or exception, in terms of the facts of the particular case wherein the rule or exception is stated or applied because, as in the development and application of principles of law involved in this case illustrates, immaterial facts of the particular case involving the principle may be erroneously taken to be essential breadth or limitation on the application of the rule, or an exception thereto. We hope we now have it correct in stating that:
The assignee of a special guaranty cannot enforce the special guaranty as to debt the assignee has created by extending credit to the debtor. An assignee of debt and of a special guaranty relating thereto can enforce the guaranty as to debt resulting from credit extended by the original creditor to the debtor, whether or not that assigned debt is due or past due at the time of the assignment.
Accordingly we reverse and remand for determination of the liability of the guarantor for the proper amount of the balance, if any, of guaranteed debt resulting from credit extended by the original named creditor to the debtor and assigned to the assignee.
REVERSED and REMANDED for proceedings consistent with this opinion.
GRIFFIN and DIAMANTIS, JJ., concur.
NOTES
[1] Some courts hold that the assignment of a special guaranty is effective to collect obligations existing at the time of the assignment, see Mechanics' American National Bank v. Rowell, 182 S.W. 989 (Mo. 1916), others hold that whether a special guaranty can be enforced to collect debts accruing after the assignment is a question of fact to be resolved by reference to the intent of the parties, see Sinclair Marketing, Inc. v. Siepert, 107 Idaho 1000, 695 P.2d 385 (1985), while still others hold that whether a special guaranty is assignable depends on whether the undertaking of the guarantor has been materially altered by the assignment. See Essex Int'l. Inc. v. Clamage, 440 F.2d 547 (7th Cir.1971) (Ill. law); Ampex Credit Corp. v. Bateman, 554 F.2d 750 (5th Cir.1977) (Ga. law). Others steadfastly adhere to the common law rule precluding assignment of special guaranties. See Flying J., Inc. v. Booth, 773 P.2d 144 (Wyo. 1989).
[2] A provision in a special guaranty expressly providing for assignment may also expressly permit enforcement by an assignee. See Bartmann v. Maverick Tube Corp., 853 F.2d 1540 (10th Cir.1988). No such language is included in the instant guaranty.
[3] See, e.g., Sinclair Marketing v. Siepert, 107 Idaho 1000, 695 P.2d 385 (1985); Flying J., Inc. v. Booth, 773 P.2d 144 (Wyo. 1989).
[4] The guarantor's and trial court's reliance on Essex International, Inc. v. Clamage, 440 F.2d 547 (7th Cir.1971) as precluding liability because the assignment constitutes a material change in the guaranteed business dealings is misplaced since under this principle, it is only for pre-assignment extensions of credit that recovery can be had.