DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

GEICO INDEMNITY COMPANY,

Appellant/Cross-Appellee,

v.

SHAZAM AUTO GLASS, LLC, a/a/o
GABRIELLA MERCADO,

Appellee/Cross-Appellant.

No. 2D2022-4232

_____

August 21, 2024

Appeal from the County Court for Hillsborough County; Michael C. Bagge-Hernandez, Judge.

Michael C. Clarke and Joye B. Walford of Kubicki Draper, P.A., Tampa, for Appellant/Cross-Appellee.

David M. Caldevilla of de la Parte, Gilbert, McNamara & Caldevilla, P.A., Tampa; and Keith P. Ligori, Meaghann Ligori, Thomas McFadyen, and Torrey Clifford Taylor of Ligori & Ligori, P.A., Tampa, for Appellee/Cross-Appellant.

PER CURIAM.

Affirmed.

MORRIS and VILLANTI, JJ., Concur.
CASANUEVA, J., Concurs with opinion.

CASANUEVA, Judge, Concurring.

I concur in this court's decision to affirm but write to discuss issues which occur with a degree of frequency in litigation over the repair of cracked or broken windshields. This concurrence will specifically discuss the language of the insurance contract, small claims rules of procedure, and the pleadings and procedure utilized during the litigation of this matter.

## I.  Background

GEICO issued an insurance policy to the insured, Ms. Mercado. While the policy was active, Ms. Mercado's vehicle sustained damage to the windshield. After repairing the vehicle, Ms. Mercado assigned her rights and benefits under the policy to Shazam Auto Glass. Pursuant to this assignment, Shazam submitted a bill to GEICO. After failing to pay the bill in full, Shazam filed a complaint against GEICO for breach of contract.[1]

As it pertains to windshield coverage, Section III of the policy provides that GEICO "will pay for each loss, less the applicable deductible, caused other than by collision to the owned or non-owned auto. This includes glass breakage. No deductible will apply to loss to windshield glass." Under the same section, GEICO's policy provides that the limit of its liability for loss "[w]ill not exceed the prevailing competitive price to repair or replace the property at the time of loss." While the policy defines "prevailing competitive price" as "the price that [GEICO] can secure from a competent and conveniently located repair facility, it does not define "competent," "conveniently located," or "repair facility."

Prior to trial, GEICO asserted three affirmative defenses. GEICO did not file a formal answer or affirmative defenses. *See* Fla. Sm. Cl. R.

---

[1] GEICO paid $310.47 of the $628.12 bill.

7.090(c) ("Unless required by order of court, written pretrial motions and defensive pleadings are not necessary."). Instead, it put forward its affirmative defenses through discovery by answering Shazam's interrogatories. Specifically, GEICO asserted: (1) GEICO paid the claim pursuant to its limitation of liability provision within the policy, (2) Shazam must prove it has standing to maintain its action pursuant to a valid assignment of benefits from the Insured, and (3) Shazam waived the right to charge a higher, unilaterally set amount. And pursuant to Florida Small Claims Rule 7.135, Shazam moved for summary disposition on GEICO's affirmative defenses.

Finding no admissible facts to support GEICO's defenses, the trial court granted summary disposition.

## II.    Discussion

Our supreme court has held that "[a]n affirmative defense is a defense which admits the cause of action, but avoids liability, in whole or in part, by alleging an excuse, justification, or other matter negating or limiting liability." *State Farm Mut. Auto. Ins. Co. v. Curran,* 135 So. 3d 1071, 1079 (Fla. 2014) (quoting *St. Paul Mercury Ins. Co. v. Coucher,* 837 So. 2d 483, 487 (Fla. 5th DCA 2002)); s*ee also Mintz Truppman, P.A. v. Cozen O'Connor, PLC,* 346 So. 3d 577, 580 n.8 (Fla. 2022) (same).

It is the defendant who bears the burden of proving an affirmative defense. *Custer Med. Ctr. v. United Auto. Ins. Co.,* 62 So. 3d 1086, 1096 (Fla. 2010). And an affirmative defense must be measured against the cause of action it seeks to avoid.

Here, Shazam's complaint put forth a cause of action based upon its assigned contract rights from the insured and GEICO's alleged breach of those contractual rights. This court has "identified the three elements for a cause of action for breach of contract as: '(1) a valid contract, (2) a

3

material breach, and (3) damages.' " *JF & LN, LLC v. Royal Oldsmobile-GMC Trucks Co.*, 292 So. 3d 500, 508 (Fla. 2d DCA 2020) (footnote omitted) (quoting *Havens v. Coast Fla., P.A.*, 117 So. 3d 1179, 1181 (Fla. 2d DCA 2013)). Thus, to emphasize the obvious, damages are an element of a cause of action for breach of contract. And as Judge Gross wrote, "an essential element of the plaintiff's cause of action is not an affirmative defense." *Rauch, Weaver, Norfleet, Kurtz & Co. v. AJP Pine Island Warehouses, Inc.*, 313 So. 3d 625, 629–30 (Fla. 4th DCA 2021) (citing *Commerce P'Ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 390 (Fla. 4th DCA 1997)).

Accordingly, I regard GEICO's assertion that it paid the claim pursuant to its limitation of liability provision within the policy as an argument regarding performance of the contract and not one that admits the cause of action and avoids liability under the contract. If sufficient payment is proven, there has been no breach of GEICO's contractual duty and no damages are due to plaintiff; the contract has been fully performed. Thus, GEICO did not, in my view, assert an affirmative defense.

Further, just as the proponent of an affirmative defense bears the burden of persuasion, the plaintiff bears the burden to "establish by a preponderance of the evidence each element of his cause of action." *Id.* at 630 (quoting *Sharp v. Long*, 283 So. 2d 567, 568 (Fla. 4th DCA 1973)). Here, Shazam accepted an assignment of rights from Ms. Mercado. "Generally, an assignor conveys to the assignee his or her rights and interests in the property or interest assigned." *Dove v. McCormick*, 698 So. 2d 585, 589 (Fla. 5th DCA 1997) (citing *State v. Family Bank of Hallandale*, 667 So. 2d 257, 259 (Fla. 1st DCA 1995)). The "assignee stands in the shoes of his assignor" and, therefore, cannot receive a

4

greater right than the assignor had at the time of the assignment. *Id.* (quoting *Cadle Co. II, Inc. v. Stamm,* 633 So. 2d 45, 46 (Fla. 1st DCA 1994)). Because Shazam possessed only the rights assigned to it, it is entitled only to payment of the "prevailing competitive price to repair or replace the property at the time of loss." And Shazam, as plaintiff, is required to prove every element of its cause of action for breach of contract, including damages. Proof of damages in this instance includes not only the invoice for the cost of repair, but proof that the repair was a "prevailing competitive price."

Shazam, however, contends that the rationale set forth in *Curran* alters the customary burden of proof imposed upon a plaintiff. I disagree.

In *Curran,* the individual insured by State Farm—Curran—was rear-ended by an underinsured motorist. 135 So. 3d 1071, 1073. State Farm approved a settlement agreement between the parties. *Id.* Later, Curran indicated that due to her injuries, her damages totaled approximately 3.5 million dollars. *Id.* She sought "her $100,000 underinsured motorist policy limits and offered to settle and release State Farm from an uninsured motorist . . . lawsuit if it tendered the policy limits." *Id.* Prior to issuing any payment, State Farm sought to have Curran submit to a compulsory medical examination, arguing that her policy imposed upon her a duty to submit to the exam and that there was "no right of action against [State Farm] until all the terms of [the] policy [were] met." *Id.* at 1073-74 (first alteration in original). State Farm contended that the contractual language was "a condition precedent to both coverage and to suit, which constitutes a material breach of the policy resulting in forfeiture of coverage irrespective of any showing of prejudice to State Farm." *Id.* at 1076.

Our supreme court answered the following questions of great public importance, as rephrased by the court:

> When an insured breaches a compulsory medical examination provision in an uninsured motorist contract, does the insured forfeit benefits under the contract without regard to prejudice? If prejudice must be considered, who bears the burden of pleading and proving that issue?

*Id.* at 1073. It is the answer to the second question that I focus on in the case before us. The court held that "the insurer as the defensive party pleading an affirmative defense has the burden of pleading and proving prejudice." *Id.* The court specifically held "that the burden of pleading and proving that issue is on State Farm. State Farm raised this issue as an affirmative defense." *Id.* at 1079. In *Curran,* the insurer sought to avoid liability for payment by asserting that a condition precedent had not yet occurred so that payment had not yet accrued under the policy's terms. Performance of payment under the policy was sought to be avoided, and the pleading did not assert that full performance of the insurance contract had been made.

Thus, I perceive a difference in the litigation between an assertion of contract performance and contract avoidance. The former I view as an issue of proof. If full payment was made in accordance with the contract of insurance, then there can be no damage award. Shazam, as an assignee, is entitled only to the payment rights afforded to its assignor under its contract of insurance. That is, Shazam is entitled to receive payment of the competitive prevailing price and not a reasonable price as alleged in its claim. Should there be a deficiency for the latter payment, Shazam may need to look to its customer.

---

Opinion subject to revision prior to official publication.